IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:18cr243-MHT |
| | ) | (WO) |
| WILLIAM DECORY MAURICE | ) | |
| EASTERLY | ) | |

OPINION AND ORDER

This case is now before the court on defendant William Decory Maurice Easterly's motion to review the pretrial detention order entered by a United States Magistrate Judge after a hearing. Pursuant to 18 U.S.C. § 3142, this court reviewed the transcript of the initial detention hearing (on which both the government and Easterly asked the court to rely), held its own hearing, received additional evidence, and conducted an independent review of the case. *See United States v. King*, 849 F.2d 485, 489-90 (11th Cir. 1988). For the reasons stated below, the court affirms the magistrate judge's detention order.

The Bail Reform Act of 1984 provides that if, after a hearing, "the judicial officer finds that no

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). "[A] finding of either danger to the community *or* risk of flight will be sufficient to detain the defendant pending trial." *King*, 849 F.2d at 489 (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). The "dangerousness" necessary to justify pretrial detention "has a much broader construction than might be commonly understood in everyday parlance." *Id*. at 487, n.2. In fact, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" *Id*. (quoting S. Rep. No. 98-255, 98th Cong., 1st Sess. 1983, 1984 U.S.C.C.A.N. 3182, 3195-96).

The Act further provides a rebuttable presumption "that no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)...." 18 U.S.C. § 3142(e)(3)(A). The statutory presumption puts the burden on the defendant to produce evidence "to suggest that he is either not dangerous or not likely to flee if turned loose on bail." *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985). "The defendant's obligation to come forward with evidence," however, "does not shift to the defendant the government's burden of persuasion." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (citing *King*, 849 F.2d at 488). Furthermore, even if the defendant rebuts the presumption, it remains "as an evidentiary finding militating against release, to be weigh[ed] along with other evidence...." *King*, 849 F.2d at 488 (quoting

*Portes*, 786 F.2d at 764).

The statutory presumption for detention arises in this case. Easterly, along with four others, was indicted by a grand jury for conspiracy and possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. These offenses carry a mandatory minimum sentence of ten years under the Controlled Substances Act, *see* 21 U.S.C. § 841(b)(1)(A)(ii), and a grand jury's indictment constitutes probable cause to believe that Easterly committed such offenses. *See King*, 849 F.2d at 487-88. Therefore, the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies here. 18 U.S.C. § 3142(e)(3)(A).

The government presented compelling evidence of Easterly's dangerousness. Montgomery DEA Task Force Officer Scott Kendall testified that authorities wiretapped and intercepted phone conversations between

Easterly and one of his co-defendants, Jose Ocampo-Gonzalez, allegedly discussing transactions involving "kilogram quantities of cocaine." Aug. 3, 2018 Hr'g Tr. (doc no. 128) at 23:11-15. One of these intercepted calls, dated April 15, 2018, occurred just prior to what Officer Kendall testified was a drug buy between Easterly and Ocampo-Gonzalez. In the course of the conversation, Easterly told Ocampo-Gonzalez: "I got my son with me ... [t]oday. But, if you want ... if it's true then ... he'll just have to ride with me ... I should be leaving here in about an hour and half." Gov't Ex. 1 (CD); Linesheets of Calls (doc. no. 81-4); *see also* CD of Calls (doc. no. 81-3). Later that day, having been tipped off by the call, Alabama authorities conducted a traffic stop on Easterly and found a firearm and one kilogram of cocaine in his car. The government produced video footage from the traffic stop that clearly shows Easterly's 13-year-old son in the front passenger's seat of the car just next to the front middle console in which police found the cocaine.

The police retrieved the firearm from Easterly's waistband. Thus, it appears that Easterly took his son with him to the alleged drug deal.

After the Alabama police stop in April, and with knowledge that charges made against him would likely follow, Easterly continued to engage in drug activity. He was stopped again in July, this time in Georgia, where police found half a kilogram of cocaine, a firearm, marijuana, hydrocodone tablets, and an unidentified powdery substance in his car.

Easterly's engagement with the alleged conspiracy does not appear to have been minor. After the traffic stop in April, police obtained a search warrant for Easterly's home and storage unit. At his home, authorities found one-quarter kilogram of cocaine, four to five pounds of marijuana, 47.5 grams of crack cocaine, hydrocodone pills, digital scales, a money counter, and approximately $ 30,000 in cash. At the storage unit, authorities found two handguns, one rifle, digital scales, approximately $ 200,000, and two

containers of an unidentified powdery substance. Easterly was later arrested after returning home from out of state once he learned about the warrant for his arrest.

At the hearing before the magistrate judge, Easterly attempted to establish that he was not a flight risk or a danger to the community. He pointed out that, although he was charged over a decade ago with three separate assault charges and failed to appear in court for a traffic violation, he had no criminal convictions on his record, and one of the assault charges did not result in an indictment. He also argued that he is trusted and supported by his community, as shown by his active barbershop business and "day-to-day dealings with the community over the last 20 years." Aug. 3, 2018 Hr'g Tr. (doc. no. 128) at 12:24-13:5. As evidence of this positive relationship, he drew the court's attention to several members of the community who attended the hearing to show him support. Easterly also suggested potential

conditions for release and argued that, if implemented, they would alleviate concerns regarding his appearance in court or danger to the community. One witness, at the hearing to supplement the evidence presented to the magistrate judge, testified to his willingness and ability to serve as a third-party custodian for Easterly, should he be released. Easterly also offered to post his own property for bond.

Easterly's evidence speaks to his risk of flight, but is less compelling with respect to the danger he would pose if released pending trial. Easterly is charged with conspiracy and possession with intent to distribute cocaine and marijuana, and thus the charges allege conduct that likely occurred over a period of time. The court recognizes, however, that though the evidence in support of these charges is not of an isolated incident and is of a significant drug operation, that evidence might not necessarily warrant denial of pretrial release if all other circumstances pointed in the direction of release. But there are two

added concerns. First, the evidence shows that Easterly's significant April encounters with law enforcement, with knowledge that charges would likely follow, did not deter him from continuing his criminal conduct. Second, the court is especially troubled that Easterly would be so reckless and insensitive as to take a child, his 13-year-old son, to a drug buy and thereby place his son in such an extremely dangerous situation. In light of these two circumstances taken together and in conjunction with all the other evidence, including that of Easterly's alleged connection to a significant drug operation, the court does not and cannot trust Easterly, no matter what the conditions of release, singularly or in combination, are, to cease drug activity.

Based on the evidence of Easterly's continuing drug-related activities in the face of an intervening, significant law-enforcement interaction, with knowledge that drug charges were imminent; the evidence of the dangerous and harmful situation in which he placed his

son; and the evidentiary weight of the § 3142(e) presumption, the court finds that the government has met its burden of showing by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community if Easterly is released pending trial.

***

Accordingly, it is ORDERED that:

(1) Defendant William Decory Maurice Easterly's motion for review of detention order (doc. no. 108) is granted.

(2) The detention order of the magistrate judge (doc. no. 87) is affirmed.

DONE, this the 9th day of October, 2018.

/s/ Myron H. Thompson  
**UNITED STATES DISTRICT JUDGE**